# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**GREATER CALLECITA NEIGHBORHOOD
ASSOCIATION, a New Mexico non-profit
corporation, RICHARD FOLKS, and
FREDERICK M. ROWE,**

      **Plaintiffs,**

v.                                                     CIV. No. 99-837 JP/WWD

**HYDE PARK COMPANY, LLC, a New Mexico
limited liability company, HP DEVELOPMENT,
INC., KEN HINKES, MURRAY KELLY, KARL
H. SOMMER, WILLIAM C. KUEFFER, and
DARRYL G. LEWIS,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

On December 6, 1999 Defendant Karl H. Sommer filed a Motion to Dismiss (Doc. No. 27). After thoroughly reviewing the briefs and the applicable law, I conclude that Defendant Sommer's motion should be granted as to Plaintiffs' federal claims against Defendant Sommer.

## I. LEGAL STANDARD

In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must liberally construe the pleadings, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). A claim may only be dismissed if it appears to a certainty that the claimants can prove no set of facts in support of their claims which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## II. BACKGROUND

This is the third federal lawsuit to arise out of Plaintiffs' opposition to a proposed housing development in Santa Fe, New Mexico called "Los Vecinos" that has never been built.[1] The Plaintiffs in this lawsuit include Greater Callecita Neighborhood Association ("Neighborhood Association"); the President of the Neighborhood Association, Richard Folks; and the Vice-President and Counsel for the Neighborhood Association, Frederick M. Rowe. Plaintiffs are suing Defendants Hyde Park Company, LLC ("Hyde Park"), who owns or has owned the sixty-

---

[1] Hyde Park filed the first lawsuit in state district court alleging state and federal claims against the Greater Callecita Neighborhood Association, Frederick Rowe, Richard Folks, and three members of the City Council of the City of Santa Fe. On July 8, 1998 the case was removed to this Court. In February 1999 I dismissed the federal claims with prejudice and remanded the case to state district court. *See Hyde Park Company, LLP v. Greater Callecita Neighborhood Association,* Civ. No. 98-821 JP/LJS, slip op. (D.N.M. Feb. 9, 1999).

Hyde Park also filed the second lawsuit in state district court alleging state and federal claims against the mayor of Santa Fe and the members of the City Council of the City of Santa Fe. The Greater Callecita Neighborhood Association, William Darkey, and Richard Folks intervened in the action. On August 21, 1998 the City Council removed the case to this Court, and on February 9, 1999 I dismissed the federal claims with prejudice and remanded the case to state district court. *See Hyde Park Company, LLP v. City Council of the City of Santa Fe,* Civ. No. 98-1011 JP/LJS, slip op. (D.N.M. Feb. 9, 1999).

Hyde Park appealed the dismissal of the federal claims in both lawsuits to the Tenth Circuit Court of Appeals. The Tenth Circuit has not yet issued its ruling in either case.

eight acre Los Vecinos tract of land; HP Development, Inc. ("HP Development"), a New Mexico corporation affiliated with Hyde Park; Karl H. Sommers, an attorney who represented Hyde Park in the first two federal court lawsuits; Ken Hinkes, a principal of Hyde Park and HP Development; Murray Kelly, who was a principal of Hyde Park and HP Development; William Kueffer, who served as the Director of the City of Santa Fe's Planning & Land Use Development from 1996 to 1998; and Darryl G. Lewis, who served as a member of the Santa Fe Planning Commission from 1994 to 1997 and who served as the Commission Chair from August 1995 until June 1997.

Plaintiffs' thirty-one page complaint alleges that Defendants conspired to gain approval for the Los Vecinos housing development in violation of Plaintiffs' state and federal rights. Count I, which is brought under 42 U.S.C. § 1983, alleges that Defendants' actions "constitute both a continuing violation and an ongoing conspiracy against Plaintiffs to deprive them of their rights of speech and of petitioning their government as protected by the First Amendment . . . and their right to fair and equal official treatment as guaranteed by the Fourteenth Amendment." (Compl. at ¶ 110.) Plaintiffs further allege that Defendants' actions violated Plaintiffs' Fourteenth Amendment equal protection rights. *Id*. at ¶ 113.

Count II alleges that Defendants Kelly, Sommer, Hyde Park Company, HP Development, Inc. and Lewis "unlawfully subjected all Plaintiffs to the tort of malicious abuse of process." *Id*. at ¶ 114. In Count III, Plaintiffs Folks and Rowe aver that Defendants Hinkes, Kelly, Sommer, Hyde Park Company, HP Development, Inc., Lewis, and Kueffer are liable for the tort of intentional infliction of emotional distress. Plaintiffs seek monetary damages and injunctive relief.

## III.    DISCUSSION

To state a claim under 42 U.S.C. § 1983, Plaintiffs must show two essential elements: (1) that the Defendants acted under color of state law, and (2) that the Defendants deprived the Plaintiffs of a right secured by the constitution and laws of the United States.[2] *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 930 (1982). The "under color of state law" requirement is a jurisdictional requirement under § 1983. *Polk County v. Dodson*, 454 U.S. 312, 315 (1981).

Defendants Sommer, Hyde Park, HP Development, Murray, and Kelly ("non-City Defendants") argue that Plaintiffs' federal claims should be dismissed because the complaint fails to allege sufficient facts to show that they acted under "color of law." "[T]o act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).

Here, the parties agree that Plaintiffs are pursuing their Section 1983 claims against non-City Defendants under two separate and distinct theories: joint action and conspiracy. It is well-established that one of the tests or factors to determine when a private actor is acting "under color of law" is the "joint action" test. *See Dennis*, 449 U.S. at 27-28; *Gallagher v. Neil Young*

---

[2] Section 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

*Freedom Concert*, 49 F.3d 1442, 1453 (1995). The "joint action" test is predicated on the Supreme Court's decision in a non-conspiracy case, *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). *See Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990) (appendix).[3] In *Lugar*, 457 U.S. at 937, the Supreme Court set out the following test to determine whether a private actor's conduct causing the alleged deprivation of a federal right was fairly attributable to the State:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

"[I]t is helpful to examine the second prong of the test first." *Barnard v. Young*, 720 F.2d 1188, 1189 (10th Cir. 1983). Recently, the Tenth Circuit has said that under the "joint action" test, "courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Gallagher*, 49 F.3d at 1453 (citations omitted).

Private actors may also be held to be acting "under color of law" when they are involved in a conspiracy with state officials to deprive other individuals of their constitutional rights. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). "[W]hen a plaintiff in a § 1983 action attempts to assert the necessary state action by implicating a state official in a conspiracy with private defendants, the pleadings must specifically present facts showing *agreement and*

---

[3] In *Crabtree* the Tenth Circuit affirmed the district court's dismissal of the plaintiffs' Section 1983 conspiracy claim "for substantially the reasons stated in the district court's order of January 30, 1989," which was attached as an appendix to the Tenth Circuit's opinion. *Id*. at 1476.

*concerted action.*" *Hammond v. Bales*, 843 F.2d 1320, 1323 (10th Cir. 1988) (emphasis added); *see also Sooner Products Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983); *Crabtree*, 904 F.2d at 1481 (appendix). "A conspiracy necessarily involves a plan to accomplish a common goal, preconceived and agreed upon by the alleged conspirators; concerted action as used in this context requires only willful participation in a joint activity." *Crabtree*, 904 F.2d at 1481 (appendix); *see also Aly v. Rocky Mountain Holding L.L.C.*, No. 98-2273, 2000 WL 18878, at *4 (10th Cir. Jan. 12, 2000) ("To prove a conspiracy between private parties and the state under Section 1983, the plaintiff must show a joint participation, agreement, or 'meeting of the minds' to violate constitutional rights.") (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 158 (1970)).[4]

Finally, I am mindful that because of the difficult nature of the proof involved, a court must proceed with caution when considering the pre-trial dismissal of conspiracy allegations in civil rights proceedings. *See Fisher v. Shamburg*, 624 F.2d 156, 162 (10th Cir. 1980). Nevertheless, "mere conclusory allegations with no supporting factual averments are insufficient;

---

[4] The "joint action" and conspiracy tests appear to overlap in many respects. This has resulted in seemingly inconsistent analysis and application of these tests. *Compare Wesley v. Don Stein Buick, Inc.*, 42 F. Supp. 2d 1192, 1202 (D.Kan. 1999) ("Plaintiff's allegations of a conspiracy . . . suggest that she is relying on the 'joint action' test to establish defendant's liability under § 1983."), *with Stephenson v. Esquivel*, 614 F. Supp. 986, 989 (D.N.M. 1985) ("One way the 'joint action' test is satisfied is if a 'conspiracy' is shown.").

the pleadings must specifically present facts tending to show agreement and concerted action."[5] *Sooner*, 708 F.2d at 512 (citing *Clulow v. Oklahoma*, 700 F.2d 1291, 1303 (10th Cir. 1983)); *see also Boultor v. Jordan*, 733 F. Supp. 85, 87 (D.Col. 1990) ("Mere conclusory allegations of civil conspiracy alleged in an effort to bring a case under § 1983, however, cannot withstand a motion to dismiss.") (citation omitted).

The averments in Plaintiffs' complaint, which must be accepted as true, contain the following specific allegations concerning Defendant Sommer.

In August 1996 Defendant Sommer began representing Defendant Hyde Park. (Compl. ¶ 73.) Defendant Sommer was an old friend of Defendant Lewis' and had represented him in domestic violence litigation from August 1994 until October 1995. *Id*. Defendant Lewis' May 1992 bankruptcy discharge listed $1,800 of unpaid legal fees owing to Defendant Sommer's law firm. *Id*.

At a January 29, 1997 City Council hearing on the Neighbors' appeal of the Planning Commission's approval of the Los Vecinos project, Defendant Sommer "derailed the appeal by a last-minute motion to dismiss, without notice to the Neighbors, that resulted in tabling the case. *Id*. at ¶ 75. The next day, Defendant Sommer had a letter hand-delivered to Plaintiff Folks and others asking them to "supply detailed and burdensome information about all communications

---

[5] "The standard is even stricter where the state officials allegedly involved in the conspiracy are immune from suit . . . ." *Sooner*, 708 F.2d at 512. Defendant Sommer asserts that this stricter standard applies because Defendant Lewis is pleading various grounds for his immunity. However, in his motion to dismiss Defendant Lewis argues that he is immune from suit on the federal claims only as to the allegation that he provided false testimony. (Mo. to Dismiss by Defendants William C. Kueffer and Darryl G. Lewis and Memo. in Support Thereof, Docket No. 62.) Moreover, because I conclude that Plaintiffs' complaint fails to meet even the lesser standard, this issue does not effect the ultimate resolution of Defendant Sommer's motion.

with City Councilors" regarding the Los Vecinos project. *Id.* at ¶ 76. Although the letter stated there was no legal duty to provide the information, the letter also "threatened to 'pursue other avenues' if it was not supplied." *Id.*

On May 13, 1997 Defendant Sommer, in his capacity as counsel for Hyde Park, procured an *ex parte* writ of mandamus from state district court preventing the City Council from going forward with its May 28, 1997 hearing on the Los Vecinos project. *Id.* at ¶ 83. The writ was quashed a few days later. *Id.* On June 20, 1997 Defendant Sommer filed a complaint in state district court to invalidate the City Council's May 28, 1997 decision disapproving the Los Vecinos project. *Id.* at ¶ 88. In March 1998, Defendant Sommer took Defendant Lewis' deposition testimony, and during the cross-examination part of that deposition which occurred in May 1998, Defendant Lewis falsely testified regarding his ties to Defendant Sommer and his law firm. *Id.* at ¶ 89. Defendant Sommer failed to take any remedial steps to correct Defendant Lewis' false statements about his ties to Defendant Sommer and his law firm.[6] *Id.* On June 18, 1998, Defendant Sommer, who was not representing Defendant Lewis, "thwarted further inquiry into Defendant Lewis' links" with Defendant's Sommer's law firm and with Hyde Park and HP Development by filing pleadings in opposition to the Neighbors' motion to compel truthful answers. *Id.* at ¶ 91.

On June 5, 1998, Defendant Sommer filed a "baseless and spurious civil action" in state district court against the Neighbors and others. *Id.* at ¶ 94. The claims in the lawsuit were knowingly abusive and malicious and also lacked legal and factual support. *Id.* at ¶ 96. On July

---

[6] Although the complaint is not very clear on this point, it appears that the allegations in paragraph seventy-three concerning Defendant Lewis' alleged false deposition testimony given in Defendant Sommer's presence refers to the same incident alleged again in paragraph eighty-nine.

18, 1998 Defendant Sommer threatened to disqualify Plaintiff Rowe as Neighbors' counsel. *Id*. at ¶ 98. On April 13, 1999 Defendant Sommer filed a specious motion in state court to disqualify Plaintiff Rowe as Neighbors' counsel. *Id*. at ¶ 105.

In Count I, Plaintiffs allege that in furtherance of the conspiracy, "each and all of the Defendants at various times engaged in the specific wrongful acts set forth above . . . including but not limited to" Defendant Sommer's procurement of Defendant's Lewis' false deposition testimony; Defendant Sommer's June 1998 filing of a "meritless" civil action against the Neighbors; and Defendant Sommer's sending a July 18, 1998 letter and an April 13, 1999 motion to "wrongfully" disqualify Plaintiff Rowe as Neighbors' counsel.

Plaintiffs argue that Defendant Sommer acted under color of law by engaging in joint action with Defendant Lewis, a state actor. Because it is unclear whether Plaintiffs are also arguing that Defendant Sommer's invocation of state legal procedures constitutes joint action, that argument is also addressed below.

Under the Supreme Court's opinion in *Lugar*, private attorneys may be liable under Section 1983 under a theory of joint participation if they use a procedurally defective state process for prejudgment attachment of property. *See Lugar*, 457 U.S. at 941-42. In *Lugar*, the Supreme Court was careful to limit its holding to the context of prejudgment attachment, stating, "we do not hold today that a private party's mere invocation of state legal procedures constitutes joint participation or conspiracy with state officials satisfying the § 1983 requirement of action under color of law." *Lugar*, 457 U.S. at 939 n. 21 (internal quotations and citation omitted); *see also Barnard v. Young*, 720 F.2d 1188, 1189 (10th Cir. 1983) ("Application of the *Lugar* test does not change the vast weight of authority that private attorneys, by virtue of being officers of

the court, do not act under color of state law within the meaning of section 1983.") (citation omitted).

Plaintiffs cited two cases to support their assertion that private attorneys are not automatically exempt under Section 1983. *See Buller v. Beuchler*, 706 F.2d 844 (8th Cir. 1983) (holding that defendant creditors and attorneys acted under color of law when they garnished the proceeds of plaintiffs' auction sale under South Dakota's garnishment law, which had been declared unconstitutional six years earlier), *abrogated by Wyatt v. Cole*, 504 U.S. 158 (1992); *Jordan v. Fox, Rothschild, O'Brien and Frankel*, 20 F.3d 1250, 1267 (3d Cir. 1994) (holding that "a judgment creditor who uses Pennsylvania's procedure for executing on a confessed judgment acts under color of law and becomes a state actor under *Lugar*."). While it is true that a private attorney may be acting under color of law for purposes of Section 1983 liability, *Buller* and *Jordan* do not mean that a private attorney who files suit in state court automatically acts under color of law for purposes of Section 1983 liability. *See Brown v. Chaffee*, 612 F.2d 497, 501 (10th Cir. 1979) ("Lawyers do not act under color of state law solely by engaging in private litigation on behalf of their clients.") (citation omitted).

In *Jordan* the Third Circuit emphasized that before a private person can be deemed to be a state actor the "state must *significantly* contribute to the constitutional deprivation, *e.g.*, authorizing its own officers to invoke the force of law in aid of the private person's request." *Jordan*, 20 F.3d at 1266 (emphasis added). Applying this principle to the case before it, the Third Circuit held that "entry of the judgment is not a state action involving the force of law to an extent sufficient to hold that private persons become state actors and therefore can be liable under section 1983." *Id.*; *see also Hoai v. Vo*, 935 F.2d 308, 313 (D.C. Cir. 1991) (discussing *Lugar*

and stating that the "'joint activity' theory of section 1983 liability continues to require, at a minimum, some *overt and significant* state participation in the challenged action.") (emphasis added).

The Tenth Circuit has held that an attorney who employs a subpoena duces tecum does not "rise to the level of acting together with or obtaining significant aid from state officials" for purposes of determining whether the attorney acted under color of state law. *Barnard v. Young*, 720 F.2d 1188, 1189 (10th Cir. 1983). In *Barnard*, the Tenth Circuit said, "[u]se of the court device of a subpoena duces tecum is no more joint action between the private attorney and the court than was the allegedly improper taking of a deposition in *Skolnick v. Martin*, 317 F.2d 855 (7th Cir. 1963)." *Id*. The court emphasized that "[t]here is no claim here that state officers seized the documents or otherwise acted to enforce the subpoena. Thus this case does not come under the 'joint participation' doctrine.'" *Id*.

Here, the lawsuit Defendant Sommer filed did not involve any prejudgment attachment of property or garnishment proceedings. Nor did the lawsuit invoke New Mexico's procedure for executing on a confessed judgment. Plaintiffs' complaint does not allege that the state authorized its own officers to invoke the force of law as a result of the lawsuit filed by Defendant Sommer on behalf of Hyde Park. Because "[t]here is no cause of action under the Civil Rights Act in this case where the state did no more than furnish a forum to private parties and had no interest in the outcome," *Shaffer v. Cook*, 634 F.2d 1259, 1260 (10th Cir. 1980) (citing *Torres v. First State Bank of Sierra County*, 588 F.2d 1322, 1326 (10th Cir. 1978)), Defendant Sommer's mere filing of a lawsuit, his subsequent filing of various motions and responses, and his taking Defendant Lewis' deposition and failing to correct Defendant Lewis' alleged misrepresentations, does not

constitute joint action with the court.

Plaintiffs also argue, however, that Defendant Sommer acted jointly with "governmental co-defendants" Lewis and Keuffer to violate Plaintiffs' constitutional rights. Although Plaintiffs have alleged that Defendants Sommer and Lewis were friends, that Defendant Lewis owed Defendant Sommer's law firm $1,800, that Defendant Sommer took Defendant Lewis' deposition and failed to correct his alleged misrepresentations, and that Defendant Sommer filed a response to Plaintiff's motion to compel Defendant Lewis' truthful answers, these allegations do not show that Defendant Sommer acted in concert with state actors, or obtained significant aid from them, in depriving Plaintiffs of their constitutional rights. *See Gallagher*, 49 F.3d at 1453; *Lugar*, 457 U.S. at 937. Hence, Plaintiffs' joint action theory against Defendant Sommers is without merit.

Plaintiffs' contend that their allegations of a conspiracy between Defendant Sommer and Defendants Lewis and Kueffer at paragraphs 94-96 and 110-12 of their complaint are sufficient to withstand a motion to dismiss. Plaintiffs specifically state, "the facts alleged and the reasonable inferences therefrom . . . demonstrate extensive concerted action, overt acts and an agreement." (Resp. at 17.)

As discussed, *supra*, the allegations concerning Defendant Sommer's role in the alleged conspiracy focus almost exclusively on his ties with Defendant Lewis. While Plaintiffs allege that the two were old friends, friendship between a private party and a state actor, standing alone, does not establish a conspiracy. *Hammond*, 843 F.2d at 1323. Although Plaintiffs have alleged a number of other facts, including that Defendant Lewis owed Defendant Sommer's law firm $1,800, these facts do not satisfy the requirement that the "pleadings [ ] specifically present facts showing agreement and concerted action." *Id.*; *Sooner*, 708 F.2d at 512 (holding that plaintiff's

-12-

allegations were insufficient to show a conspiracy between attorneys and judge when only fact averred to support the conspiracy was that judge later joined the law firm that had been involved in the litigation); *see also Crabtree*, 904 F.2d at 1481 (appendix) (holding that plaintiffs' allegations of conspiratorial conduct, which consisted in part of ex parte communications between a judge and attorneys, could not withstand a motion to dismiss). While Plaintiffs argue that the "reasonable inferences" to be drawn from the facts in their complaint demonstrate that Defendant Sommer was part of a conspiracy to deprive Plaintiffs' of their constitutional rights, under clearly established Tenth Circuit law, inferences do not satisfy the requirement that a conspiracy be pled with specific facts. *See Sooner*, 708 F.2d at 512 ("mere conclusory allegations with no supporting factual averments are insufficient.").

Because Plaintiffs have failed to allege specific facts showing an agreement, concerted action, or meeting of the minds, their Section 1983 conspiracy claim alleged against Defendant Sommer should be dismissed with prejudice. *See Sooner*, 708 F.2d at 512; *Shaffer*, 634 F.2d at 1260 (holding that plaintiff's complaint was properly dismissed when the only allegation to support plaintiff's conspiracy theory against attorneys was that he saw one of them speaking with the judge before plaintiff's hearing).

Defendant Sommer argues that this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims once Plaintiffs' federal claims against Defendant Sommer are dismissed. Plaintiffs respond that this Court retains jurisdiction over the state law claims alleged against Defendant Sommer because federal claims are still pending against the remaining Defendants. I decline to address this issue until I have ruled on the pending motions to dismiss filed by the remaining Defendants.

IT IS THEREFORE ORDERED that Defendant Sommer's motion to dismiss should be GRANTED in part and the federal claims asserted under Section 1983 claims against Defendant Sommer should be dismissed.

*[signature: James A. Parker]*
UNITED STATES DISTRICT JUDGE